NOT FOR PUBLICATION

RECEIVED
DEC 19 2017
AT 8:30_____M
WILLIAM T. WALSH CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY A. BELLAK; THERESA P. CIBOTTI; MARC S. CRAMER; THOMAS J. CROWE; JOHN F. DALLY; JOHN FUHRMEISTER; PHILIP CARUSO; JEFFREY B. NUSSBAUM; CHARLES McKENNA AND JANE/JOHN DOE(s) WELLS FARGO HOME MORTGAGE CONSULTANTS,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & CO., WELLS FARGO BANK, N.A., DBA WELLS FARGO HOME MORTGAGE; ABC CORPORATION(S) 1-10 and/or JANE/JOHN DOES(S) SUPERVISORS 1-10, individually and/or as agents, servants and/or employees of the above-named corporate defendants and ABC Corporation(s) 1-10,<br><br>Defendants. | Civ. No. 17-2757<br><br>**OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court on a renewed motion to dismiss brought by Defendants Wells Fargo & Co. and Wells Fargo Bank, N.A. ("Defendants"). (ECF No. 13.) Plaintiffs Jeffrey A. Bellak, Theresa P. Cibotti, Marc S. Cramer, Thomas J. Crowe, John F. Dally, John Fuhrmeister, Philip Caruso, Jeffrey B. Nussbaum, and Charles McKenna ("Plaintiffs") oppose and cross-move for leave to amend their pleading. (ECF No. 16.) Defendants oppose the Cross-Motion. (ECF No. 19.) The Court has decided the motions based on the parties' written submissions and without oral argument pursuant to Local Civil Rule

1

78.1(b). For the reasons stated herein, Defendants' Motion is granted and Plaintiffs' Cross-Motion is denied.

## BACKGROUND

This case involves Defendants' alleged wrongful termination of Plaintiffs. Plaintiffs' allegations are as follows. Plaintiffs are citizens of New Jersey or Pennsylvania, and are former employees of Defendant Wells Fargo & Co. ("Defendant Wells"), within the Wells Fargo Home Mortgage Division of Defendant Wells Fargo Bank, N.A. ("Defendant Wells N.A."). (Am. Compl., ¶¶ 5, 31, ECF No. 3-1.) Defendants extensively violated a provision of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 ("RESPA"), which prohibits procuring referrals of potential mortgage customers from real estate title insurance companies in exchange for referrals back from the mortgage customers. (*Id.* ¶¶ 9–11.) Previously, the Consumer Financial Protection Bureau ("CFPB") and the State of Maryland Office of the Attorney General filed a Complaint against Defendant Wells and other named defendants. (*Id.* ¶¶ 13–14.) Defendant Wells was required to pay fines in excess of $34,000,000 as part of a settlement of the case involving the CFPB. (*Id.* ¶ 26.)

Subsequently, Defendant Wells N.A. advised the CFPB that it was conducting an internal investigation to seek out those employees responsible for the violations. (*Id.* ¶ 41.) Plaintiffs were interviewed during this internal investigation. (*Id.* ¶¶ 44, 54.) Plaintiffs' supervisors approved of and encouraged Plaintiffs to continue to use business practices which violated CFPB regulations. (*Id.* ¶¶ 55–56.) Then, in the first week of January 2015, Plaintiffs complied with the directions of their supervisors to discontinue the business practices in question. (*Id.* ¶ 58.) On April 13, 2015, Defendant Wells issued a policy memorandum declaring these business practices to be against company rules. (*Id.* ¶ 57.) Despite Plaintiffs' discontinuing these business practices at the direction of their supervisors in January 2015, Plaintiffs were terminated for continuing to

2

use these business practices. (*Id.* ¶¶ 56, 58.) All of the Plaintiffs except Charles McKenna were terminated before April 13, 2015, the effective date of the new company rule. (*Id.* ¶ 59.) Plaintiff Charles McKenna was terminated on June 8, 2015. (*Id.* ¶ 60.) Plaintiffs claim that they were arbitrarily terminated in order to create the false appearance of conducting a true internal investigation. (*Id.* ¶ 63.) Plaintiffs do not plead facts regarding the existence of an employment contract between Plaintiffs and Defendants, and therefore do not specify whether Plaintiffs were employed "at will" or could only be terminated for cause. (*See, e.g., id.* ¶¶ 32, 75.)

Plaintiffs' Complaint asserts three Counts: (1) Wrongful Termination, Breach of Covenant of Good Faith and Fair Dealing; (2) Punitive Damages; and (3) Conversion. (*Id.* ¶¶ 68–99.) This case was originally filed in the Superior Court of New Jersey, Law Division, Mercer County. (*See* ECF No. 1.) On April 21, 2017, Defendants removed the case to this Court on the basis of diversity jurisdiction. (*Id.*) On April 24, 2017, Defendants filed an amended notice of removal. (*See* ECF No. 3.) On May 12, 2017, Defendants moved to dismiss (ECF No. 6), which Plaintiffs opposed (ECF No. 8). On August 9, 2017, the Court denied Defendants' Motion without prejudice, explaining that both parties failed to adequately brief the choice of law issue, which prevented the Court from properly analyzing Defendants' Motion. (ECF Nos. 11, 12.)

On August 30, 2017, Defendants again moved to dismiss, addressing the choice of law issue. (ECF No. 13.) Plaintiffs opposed and cross-moved for leave to file a second amended complaint (ECF No. 16), including their Proposed Second Amended Complaint as an exhibit (Pls.' Br., Ex. 10, ECF No. 16-10). In reply and opposition to Plaintiffs' cross-motion, Defendants contend that Plaintiffs should be denied leave to amend on grounds of futility. (ECF No. 19.) Both Motions are presently before the Court.

**LEGAL STANDARDS**

I.      Motion to Dismiss

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Connelly v. Lane Const. Corp.*, 2016 WL 106159 (3d Cir. Jan. 11, 2016). However, the court may disregard any conclusory legal allegations. *Fowler*, 578 F.3d at 203. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). If the complaint does not demonstrate more than a "mere possibility of misconduct," the complaint must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Although a district court generally must confine its review to the pleadings on a Rule 12(b)(6) motion to dismiss, *see* Fed. R. Civ. P. 12(d), "a court may consider certain narrowly defined types of material" beyond the pleadings. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). First, a court may consider "a document integral to or explicitly relied upon in the complaint." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Second, a court may examine any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims

4

are based on the document." *Id.* (quoting *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). All told, the Court may consider "the complaint, documents attached to or submitted with the complaint, matters incorporated by reference or integral to the claims, matters of which the Court may take judicial notice, matters of public record, orders, and other items of record in the case." *Blue Sky 1, LLC v. Jaguar Land Rover N. Am., LLC*, 2016 WL 6803081, at *4 (D.N.J. Nov. 16, 2016). But to consider other materials, the district court should convert the motion into a motion for summary judgment governed by Rule 56, Fed. R. Civ. P. 12(d), and provide adequate notice of conversion. *See, e.g., In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 185 F.d3d at 287; *Rose v. Bartle*, 871 F.2d 331, 340 (3d Cir. 1989).

II.  Motion for Leave to Amend

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend the pleadings should generally be given freely. *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is undue delay, bad faith, prejudice to the opposing party, or amending the pleading would be futile. *Id.*; *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434. "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin*, 227 F.3d at 121 (citing *Smith v. NCAA*, 139 F.3d 180, 190 (3d Cir. 1998)); *see also Pushkin v. Nussbaum*, 2014 WL 4543069, at *3 (D.N.J. Sept. 11, 2014) ("[O]ne test for whether an amended complaint would be futile is the standard for a motion to dismiss . . . .").

## ANALYSIS

I.  Motion to Dismiss

In response to the Court's request for briefing on the choice of law issue, Defendants make two arguments in their renewed Motion to Dismiss. Defendants first argue that Plaintiffs' failure to plead which State's law governs each of their claims is fatal to the Complaint,

5

requiring dismissal. In the alternative, Defendants argue that there is no conflict between the laws of New Jersey and Pennsylvania with respect to Plaintiffs' claims, and therefore New Jersey law applies, but that dismissal is required regardless of which State's law applies.

### A. Failure to Plead Governing Law

Courts in the Third Circuit routinely hold that when a complaint alleges claims arising under state law, the plaintiff's failure to plead which State's laws apply to each cause of action may result in dismissal. *See, e.g., Cole v. NIBCO, Inc.*, 2015 WL 2414740, at *5 n.2 (D.N.J. May 20, 2015); *Everett Labs., Inc. v. River's Edge Pharm., LLC*, 2010 WL 1424017, at *6 (D.N.J. Apr. 8, 2010); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009). Plaintiffs' Amended Complaint broadly suggests that the laws of New Jersey, Pennsylvania, or both jurisdictions may apply to their claims (*see, e.g.*, Am. Compl. ¶¶ 69, 93),[1] but such oblique references do not suffice under the Rule 8 pleading standard. *Cole*, 2015 WL 2414740, at *5 n.2. The Court could thus grant Defendants' Motion to Dismiss on this basis.[2] "When the parties agree upon which state's law applies, however, the Court need not conduct this choice-of-law inquiry." *UBI Telecom Inc. v. KDDI Am., Inc.*, 2014 WL 2965705, at *9 (D.N.J. June 30, 2014); *accord Redmond v. ACE Am. Ins. Co.*, 614 F. App'x 77, 79 n.2 (3d Cir. 2015). For the purposes of these motions, the parties agree that New Jersey law applies to all of Plaintiffs' claims. (Defs.'

---

[1] In response to Defendants' initial motion to dismiss, Plaintiffs suggested their claims could arise under New Jersey or Pennsylvania law. (*See* Pls.' Br. at 5–7, 19–21, ECF No. 8.) Plaintiffs' opposition to Defendants' renewed motion to dismiss suggests the laws of New Jersey, Pennsylvania, and, without further mention, California may apply, but that New Jersey law should govern. (*See* Pls.' Br. in Opp'n to Defs.' Renewed Mot. Dismiss at 2, ECF No. 16.)

[2] Plaintiffs' argue, without merit, that they are not bound to the Rule 8 pleading standard because their Complaint was removed to federal court by Defendants, not initiated here by Plaintiffs. (*See* Pls.' Br. in Opp'n to Defs.' Renewed Mot. Dismiss at 7–12.) The Rule 8 pleading standard applies to any federal action, including those which arrived in federal court by way of removal. *See, e.g., Olmo v. Atl. City Parasail, LLC*, 2016 WL 1704365, at *5 (D.N.J. Apr. 28, 2016) ("[T[he Court applies the federal rules to determine the sufficiency of Plaintiffs' pleading even though the complaint was filed in state court and removed to this Court.").

Renewed Mot. Dismiss at 2–3, ECF No. 13; Pls.' Br. in Opp'n to Defs.' Renewed Mot. Dismiss at 3, 13; Defs.' Reply at 6, 13, 13 n.1, ECF No. 19.) Accordingly, the Court will not apply New Jersey choice-of-law rules to determine the applicable state substantive law. *See, e.g., Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017); *Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006). Instead, the Court will evaluate whether Plaintiffs' Amended Complaint survives a Rule 12(b)(6) motion to dismiss on the basis of New Jersey law.

### B. *Plaintiffs' Amended Complaint Fails to State a Claim on Any Count*

Plaintiffs plead three Counts in their Amended Complaint: (1) Wrongful Termination, Breach of Covenant of Good Faith and Fair Dealing; (2) Punitive Damages; and (3) Conversion. (Am. Compl. ¶¶ 68–99.) The Court will evaluate each in turn.

#### 1. Wrongful Termination, Breach of Covenant of Good Faith and Fair Dealing

Plaintiffs' first Count is framed as a common law claim for wrongful termination in breach of the contract-based implied covenant of good faith and fair dealing. Under New Jersey law, employees are presumptively employed "at will," meaning "an employer may fire an employee for good reason, bad reason, or no reason at all . . . ." *Witkowski v. Thomas J. Lipton, Inc.*, 643 A.2d 546, 552 (N.J. 1994). In a judicially created exception to the at will presumption,

> under *Woolley*, if a plaintiff can prove that an employment manual containing job-security and termination procedures could reasonably be understood by an employee to create binding duties and obligations between the employer and its employees, the manual will constitute, in effect, a unilateral offer to contract that an employee may accept through continued employment.

*Id.* at 553 (citing *Woolley v. Hoffmann-La Roche, Inc.*, 491 A.2d 1257, 1270–71 (N.J. 1985)). Plaintiffs do not plead facts related to the existence of an employment contract or employee handbook creating contractual obligations, nor do they plead any claim for breach of contract. (*See* Am. Compl. ¶¶ 68–75; *see also* Defs.' Renewed Mot. Dismiss, Ex. B, at 3 ("There are no

allegations in the Amended Complaint that even attempt to rebut the at-will presumption."); Pls.' Br. in Opp'n to Defs.' Renewed Mot. Dismiss at 12–13 (conceding that Plaintiffs did not incorporate the Wells Fargo Employee Handbook by reference in their Amended Complaint, but could if granted leave to amend).) Without pleading the existence of a contract, Plaintiffs cannot successfully allege breach of the contract-based implied covenant of good faith and fair dealing.

> To recover for breach of the implied covenant, a plaintiff must prove that: (1) a contract exists between the parties; (2) the plaintiff performed under the terms of the contract; (3) the defendant acted in bad faith with the purpose of depriving the plaintiff of rights or benefits under the contract; and (4) the defendant's actions caused the plaintiff to sustain damages.

*Luongo v. Vill. Supermarket, Inc.*, 2017 WL 2399088, at *9 (D.N.J. June 2, 2017); *see also Argush v. LPL Fin. LLC*, 2014 WL 3844822, at *4 (D.N.J. Aug. 5, 2014) (dismissing complaint alleging breach of the covenant of good faith and fair dealing in termination of at will employee). Accordingly, Plaintiffs fail to state a claim for wrongful termination in breach of the covenant of good faith and fair dealing.

To the extent that Plaintiffs alternatively attempt to plead a tort claim for wrongful discharge under Count One, it also fails. Wrongful discharge requires proof that an employee was terminated in retaliation for deviating from company action that violated a clear mandate of public policy. *See, e.g., Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505, 512 (N.J. 1980) ("An action in tort may be based on the duty of an employer not to discharge an employee who refused to perform an act that is a violation of a clear mandate of public policy."). Plaintiffs' allegations are factually inapposite. Plaintiffs argue that they dutifully, but unwittingly, performed actions in violation of a clear mandate of public policy, and were later discharged for doing so.[3] Plaintiffs

---

[3] An alternative reading of Plaintiffs' Amended Complaint is that the violation of public policy here was not Defendants' company policy of illicitly using leads from title companies but rather Defendants' ongoing fraudulent misrepresentation of compliance with consent orders related to

8

chiefly allege that their terminations were unfair because their supervisors were not *also* terminated for perpetuating unlawful conduct (Am. Compl. ¶¶ 71, 74–75, 88), but at no point do Plaintiffs allege that they were fired for refusing to engage in said conduct or in retaliation for being whistleblowers. Indeed, Plaintiffs could not sustain such a claim, as they assert they had no notion their conduct was against public policy until after they were terminated and Wells Fargo announced a company policy change in April 2015. (Am. Compl. ¶¶ 52, 56–59.) Plaintiffs' allegations that they were "used as scapegoats" (*id.* ¶ 91) cannot plausibly amount to wrongful discharge, and therefore Count One must be dismissed.

2. Punitive Damages

Defendants appropriately adduce that a claim for punitive damages is not an independent cause of action. (*See* Defs.' Br. at 8, ECF No. 6; Defs.' Reply at 9, ECF No. 19); *see also, e.g., Barkley v. Ricci*, 2008 WL 852375, at *4 (D.N.J. Mar. 28, 2008) (citing *Smith v. Whitaker*, 734 A.2d 243, 250 (N.J. 1999)). In the context of employee discharge, a claim for punitive damages requires a predicate claim in tort. *See, e.g., Pierce*, 84 N.J. at 72–73 ("In a tort action, a court can award punitive damages to deter improper conduct in an appropriate case. . . . That remedy is not available under the law of contract[.]"). Since Plaintiffs failed to plead facts sufficient to meet the underlying tort claim for wrongful discharge, any claim for punitive damages likewise fails.

3. Conversion of Intangible Book of Business

In Count Three, Plaintiffs allege the tort of conversion of their digital books of business. The allegations as presented concede their lack of grounding in the law. (*See* Am. Compl. ¶ 93

---

the CFPB litigation. (*See* Am. Compl. ¶ 70; Pls.' Br. at 8–19, ECF No. 8.) However, that alternative reading likewise does not meet the tort elements for wrongful discharge, as Plaintiffs were allegedly fired in furtherance of that alleged fraud, not for objecting to it or refusing to participate in it. Plaintiffs' allegations that their terminations are evidence of fraud committed in connection with the CFPB litigation do not state a claim for wrongful discharge.

9

("To the extent that intangible property, such as a book of business, can be converted in New Jersey . . . , Plaintiffs state a claim for conversion for their book of business.").) Under New Jersey law, "[c]onversion requires interference with tangible rather than intangible property." *Argush*, 2014 WL 3844822, at *6 (internal quotations omitted). Plaintiffs do not defend their conversion claim in opposition to the renewed Motion to Dismiss, although they defended it with a 2005 New York State case in their original opposition papers. (*Compare* Pls.' Br. in Opp'n to Defs.' Renewed Mot. Dismiss, ECF No. 16, *and* Pls.' Br. at 19–21, ECF No. 8); *see also Shmueli v. Corcoran Grp.*, 802 N.Y.S.2d 871, 874–76 (N.Y. Sup. Ct. 2005) (extending the tort of conversion to certain virtual data which could be printed and thereby transformed to literal form). Despite the intervening decade since that case was decided, New Jersey law does not yet accommodate a claim for conversion of intangible property. *See, e.g., Mu Sigma, Inc. v. Affine, Inc.*, 2013 WL 3772724, at *11 (D.N.J. July 17, 2013) ("[C]lient lists, pricing information and the like . . . are not considered tangible objects for the purposes of conversion."). Applying the Rule 12(b)(6) standard, Plaintiffs' third Count fails to state a claim. Accordingly, Plaintiffs' entire Amended Complaint must be dismissed.

II.  Plaintiffs' Motion for Leave to Amend and Proposed Second Amended Complaint

Plaintiffs have cross-moved for leave to amend (ECF Nos. 16, 16-1) and supplied a Proposed Second Amended Complaint (ECF No. 16-10). In opposition to Plaintiffs' cross motion, Defendants argue that amendment is futile because Plaintiffs' Proposed Second Amended Complaint still fails to state any claim upon which relief can be granted.

*A. Alterations Reflected in Plaintiffs' Proposed Pleading*

At the outset, the Court notes that Plaintiffs' submission does not comply with Local Civil Rule 15.1(a)(2), indicating "in what respect(s) it differs from the pleading which it proposes to amend, by bracketing or striking through materials to be deleted and underlining

10

materials to be added." L. Civ. R. 15.1(a)(2) (amended May 2017). The Court has thus compared the present operative Amended Complaint to the Proposed Second Amended Complaint.

In addition to cosmetic alterations (for example, slight rewording in paragraphs five through eight), Plaintiffs have made substantive alterations. Paragraph 40 of the proposed pleading (paragraph 31 in the Amended Complaint) now details the Wells Fargo office in which each Plaintiff was employed, in addition to their home address and state citizenship. Moreover, by way of either entirely new text or splitting and editing existing paragraphs, the proposed pleading includes roughly 44 new paragraphs (the Court noted substantive additions reflected in paragraphs 12, 28–39, 42–60, 63–65, 82–84, 88–91, 100–07, 112–13, 115–16, 132, and 135).

The more significant changes are summarized as follows: (1) Plaintiffs include new allegations to incorporate by reference the Wells Fargo Employee Handbook (the "Handbook") and the disciplinary procedures and employee review process therein (Proposed Second Am. Compl. ¶¶ 42–60, ECF No. 16-10); (2) Plaintiffs flesh out allegations about Defendants' efforts to elude the CFPB consent order (*see, e.g.*, *id.* ¶¶ 28–39, 65, 88–91); (3) Plaintiffs include new paragraphs, framed in reference to New Jersey law, disaggregating Count I ("Wrongful Termination, Breach of Covenant of Good Faith and Fair Dealing") into claims for breach of (a) implied contract under *Woolley*, 491 A.2d at 1257, and (b) the implied covenant of good faith and fair dealing purportedly under *Pierce*, 417 A.2d at 512 (Proposed Second Am. Compl. ¶¶ 100–07); and (4) Plaintiffs plead their claim for compensatory damages (Am. Compl. ¶¶ 76–83) as a separate Count (Proposed Second Am. Compl. ¶¶ 117–25). The Amended Complaint thus includes a total of four Counts: Count One for breach of implied contract and the implied covenant of good faith and fair dealing; Count Two for compensatory damages; Count Three for punitive damages; and Count Four for conversion.

11

*B. Proposed Counts Two Through Four Fail to State a Claim*

As far as the Court can discern, besides setting off the prayer for compensatory damages as a proposed separate cause of action, there are no other material changes to proposed Counts Two through Four (compensatory damages; punitive damages; conversion of intangible books of business). As an initial matter, damages are "a remedy and not a valid, independent cause of action." *New Skies Satellites, B.V. v. Home2Us Commc'ns, Inc.*, 9 F. Supp. 3d 459, 469 (D.N.J. 2014). Even in view of the additional facts Plaintiffs have pled, the Court finds Counts Two through Four all fail to state a claim upon which relief can be granted because the foregoing analysis of Plaintiffs' Amended Complaint, *supra*, applies identically to the proposed pleading. Accordingly, the proposed amendment is futile as to Counts Two, Three, and Four.

*C. Proposed Count One Fails to State a Claim Under Any Theory of Recovery*

The only remaining question is whether Plaintiffs' proposed alterations allege a breach of implied contract, on the basis of the Handbook, and a corresponding breach of the implied covenant of good faith and fair dealing sufficient to overcome a motion to dismiss.[4] As relevant to Count One, in moving papers dating back to Plaintiffs' Opposition to Defendants' first Motion to Dismiss (ECF No. 8), the parties presented the Court with relevant excerpts from the Handbook. Neither party disputes that the portions presented are authentic, and because

---

[4] As Defendants illuminate in their opposition to Plaintiffs' cross motion, Plaintiffs conflate a *Pierce* claim for wrongful discharge, which sounds in tort, with a contract-based claim for breach of the implied covenant of good faith and fair dealing. (*See* Defs.' Reply at 26.) Plaintiffs' new allegations in the proposed pleading focus on the conduct of Defendants in perpetrating a fraud on the CFPB. (*See, e.g.*, Proposed Second Am. Compl. ¶¶ 28–39.) It appears Plaintiffs misread *Pierce*, believing it broadly grants a cause of action to employees fired as part of any scheme which itself violates public policy. (*See* Pls.' Br. in Opp'n to Defs.' Renewed Mot. Dismiss at 19–25.) This is not the case. *Pierce* requires that a plaintiff have been fired in retaliation for refusing to engage in company conduct that violated a clear mandate of public policy. *Pierce*, 417 A.2d at 512. Plaintiffs' proposed pleading does not allege any new facts to support the tort elements of wrongful discharge, and therefore any attempt to plead wrongful discharge is futile.

Plaintiffs' proposed pleading incorporates this document by reference (*see* Proposed Second Am. Compl. ¶¶ 42–60), the Court will consider the excerpts in its review.

The dispositive factual inquiry on Count One is whether the Handbook created an implied contract under *Woolley* sufficient to overcome New Jersey's presumption of at will employment. "In order to proffer a plausible *Woolley* claim, plaintiff is required to bring to the Court's attention some provision or language within the manual or handbook which guarantees that he will not be terminated except for good cause." *King v. Port Auth. of N.Y. & N.J.*, 909 F. Supp. 938, 942 (D.N.J. 1995), *aff'd mem.*, 106 F.3d 385 (3d Cir. 1996). Plaintiffs concede that the handbook repeatedly references an express at will employment policy—which Plaintiffs brought to the Court's attention in response to Defendants' original Motion to Dismiss (*see* Wells Fargo Employee Handbook at 83, Pls.' Ex. 3, ECF No. 8-3)—but argue that the handbook's "employee soothing performance protections" overcome the at will employment policy. (Pls.' Br. in Opp'n to Defs.' Renewed Mot. Dismiss at 19.) Plaintiffs assert that an implied contract arises from pages 142–45 of the Handbook, which cover "problem solving," "corrective action," and "dispute resolution." (*Id.* at 15; Pls.' Ex. 1, ECF No. 16-4.)

As an initial matter, the Court notes that "*Woolley* indicates that where an entire manual has been distributed to a workforce, that manual as a whole, not just a section of the manual, is relevant to the determination of whether it creates an implied contract of employment." *Nicosia v. Wakefern Food Corp.*, 643 A.2d 554, 559 (N.J. 1994). Plaintiffs' efforts to highlight certain text divorced from the context of the entire document are therefore unavailing. Based on Plaintiffs' own submissions, the Handbook expressly defines employment as "at will," with a legally sufficient "clear and prominent disclaimer," *Woolley*, 491 A.2d at 1258; *see also Nicosia*, 643 A.2d at 561 ("[A] disclaimer must be separated from or set off in a way to attract attention."), that would overcome any implicit guarantees of contractual employment. (*See* Wells

13

Fargo Employee Handbook at 83, Pls.' Ex. 3, ECF No. 8-3 (setting off the "Employment At Will" policy on its own page, with a large, bold text heading).)

Even considering only the Handbook text on which Plaintiffs rely, Plaintiffs fail to plead a *Woolley* claim. For example, the "problem solving" portion of the Handbook states:

> **However, the policy is not progressive.** This means that your manager reserves the right to use any part of the process that he or she feels is appropriate for the situation – and, if necessary, to terminate employment without implementing performance counseling and corrective action. This is consistent with our "employment at will" policy.

(Wells Fargo Employee Handbook at 142, Pls.' Ex. 1.) This provision makes clear that any procedural protections are gratuitous offerings by the employer, and the employer retains the right to terminate employees without implementing process. Nothing in the highlighted provisions suggest that employees would be fired *only* for cause. To the contrary, under the "corrective action" header, the text continues: "Employment can also be terminated . . . if your performance or conduct is such that continued employment is no longer in the best interest of Wells Fargo." (*Id.* at 143, Pls.' Ex. 1.) The Handbook then directs the reader to the "Involuntary Termination" section, which neither party has supplied here for the Court's review. Even without consulting that section, the Court finds that the text on which Plaintiffs rely explicitly reserves discretionary termination authority to the employer, reinforcing the at will employment provision and negating Plaintiffs' contention that the Handbook creates an implied contract under *Woolley*.[5] Accordingly, Plaintiffs' efforts to amend their pleading in order to state a breach of

---

[5] To bolster their argument, Defendants submitted Plaintiffs' employment applications and agreements which acknowledged their at will status, which Defendants assert are undisputedly authentic contracts on which their defense is based, and which are therefore appropriate for the Court to consider at this juncture. (*See* Defs.' Reply at 15 (citing *Saliba v. Attorney Gen.*, 828 F.3d 182, 189 (3d Cir. 2016); *Rose*, 871 F.2d at 339 n.3).) Having determined that the Handbook fails to create express or implied contractual obligations, the Court finds no need to delve into the legal effect of these additional agreements in reinforcing the at will employment policy.

contract claim are futile; even accepting the facts as pled as true, Plaintiffs cannot show the plausible existence of a contract to rebut the presumption of at will employment.

Furthermore, as the Court explained above in reviewing Plaintiffs' Amended Complaint, a precondition for finding a breach of the implied covenant of good faith and fair dealing is the existence of a contract under which Plaintiffs performed. Having determined that Plaintiffs' proposed pleading, incorporating by reference the Handbook, does not support the existence of such a contract, the Court finds that Count One of the Proposed Second Amended Complaint fails to state a claim upon which relief can be granted in the entirety. Accordingly, amendment would be futile here, and the Court denies Plaintiffs leave to amend on that basis.

As a final matter, Plaintiffs argue that Defendants are judicially estopped from relying on Plaintiffs' at will status because they contested Plaintiffs' unemployment compensation applications on the basis that Plaintiffs had been fired for misconduct. (*See* Pls.' Br. in Opp'n to Defs.' Renewed Mot. Dismiss at 26–35.) "Judicial estoppel is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that [it] has previously asserted in the same or in a previous proceeding." *MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 486 (3d Cir. 2013), *as amended* (May 30, 2013) (quoting *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 272 (3d Cir. 2012)). Plaintiffs' argument is meritless because (1) Defendants' positions are not inconsistent (an at will employee can be fired for misconduct, *see Witkowski*, 643 A.2d at 552); (2) Defendants did not convince the prior tribunal of their position, *see MD Mall Assocs., LLC*, 715 F.3d at 486 ("[J]udicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position."); and (3) collateral estoppel categorically does not apply to the findings of an unemployment tribunal, *see Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1014 (N.J. 2006) ("[C]ollateral estoppel effect is to be denied to unemployment compensation determinations . . . .").

## CONCLUSION

For the foregoing reasons, Defendants' renewed Motion to Dismiss is granted. Plaintiffs are denied leave to amend their complaint. An appropriate order will follow.

Date: Dec 19, 2017

/s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.